United States of America v. Arturo Mendoza. Mr. Howes, you may proceed. Thank you, Chief Judge Elrod, and may it please the Court, I'm Evan Howes on behalf of Mr. Arturo Mendoza. Your Honors, we're here about several of the conditions that Mr. Mendoza will have to follow once he's on supervised release. To its credit, the government concedes that the judgment needs to be reformed to reflect the actual location monitoring condition that the District Court, in fact, imposed. And it also concedes that on remand, the District Court will have to decide the duration that that monitoring will last. So my plan is to focus on the reasons behind our view that the remand order should also instruct the District Court to strike the separate conditions that would require Mr. Mendoza to disclose all of his finances and also seek approval before opening any new credit lines during his entire term of supervised release. And if the Court will indulge me, I would like to quickly signpost the four main points I'd like to make today that I think will help clarify our position the most. The first is that this really is a case where there's zero evidentiary support for the finance and credit conditions. And that's a fact that I don't understand the government to really dispute in its briefing. Second, the record in this case, most clearly in the written statement of reasons, affirmatively refused the suggestion that the District Court ordered restitution, but simply left open the amount. But, and this is the third point, that really doesn't matter in this case because no restitution order has been entered and, and I do emphasize and, there's no factual basis for a restitution order. And fourth and finally, that last point underscores the exceedingly rare nature of this case and that is why a ruling from Mr. Mendoza will not in any way threaten the usual practice, which is in a case where a court does defer restitution, it also will order these very same conditions. It looked like there was going to be a restitution hearing. The hearing just never happened in terms of fleshing out some of this evidence and all that and there certainly was no order entered. On remand, if we agree with your position, could the District Court then hold that hearing, develop the evidence and impose restitution? In other words, is there any time limit on it? The direct answer is no, there's not any direct time limit. The indirect, I guess, answer is that, is technically yes and no. We're not here disputing that at some future point the District Court could hold a hearing, whether it's under the exception that the government has invoked from the Dolan case or whether it's from the good cause exception that's also in section 36-64-D5 that allows restitution to be ordered when new evidence is discovered. So that could happen in the future and what we know from the Supreme Court's 2017 decision in Manrique, which answered the question Dolan left open, that separate order, whenever it comes, would be separately appealable. So at that point in time, if the District Judge entered restitution, let's say because there's newly discovered evidence, District Court enters restitution, at that time 3583-D2 allows the District Court to modify the conditions of release, add these two conditions back, and we can appeal, and any appeal that would challenge these conditions when they come back would rise and fall with the challenge to the restitution because that's the only basis for the idea that these conditions would be consistent with the Sentencing Commission's policy statements in this case. So you would like to run the table and have those determined that they're not appropriate today, but you could live to fight another day on that in a more appropriately developed record. Certainly, although I would say that Mr. Mendoza would suffer a harm if the Court were to leave the conditions in place and then require... No, not leave the condition in place, but vacate because there was no hearing and all that sort of thing, but without determining whether they could be appropriate and inappropriate. Exactly. That's what I... The Court could still have a hearing and appropriately determine them, and then you could appeal that if you weren't satisfied. It could, Judge Elrod. I would, just to be very nuanced here, I do think that under the Green Law decision cited in the reply brief, that this separately appealable judgment that's before the Court now does not contain a restitution order, and the remand, the mandate that would produce the remand here for re-sentencing or for re-evaluation of the conditions would not encompass restitution. Would not unless we said something in the... As proceedings consistent, including saying, the District Court did not actually order any restitution here, and therefore these conditions cannot be reasonably related to the 3583D factors, but the Court is not limited on remand from pursuing that should it choose to do so or something. I think you could say that the Court could hold a re-sentencing hearing and then also separately hold a restitution hearing, because I do think that they are two separate components, and as I understand this Court's mandate, we'll remember this Court's conception of the mandate is a little bit more strict than other circuits. It's a very limited remand, not an open remand, and so usually something has to arise... So you don't think it's... You don't think it would be a best practice for us to open the door for that? You think we should close the door? I think you should close the door for now, but you can absolutely note that nothing precludes the government from attempting to try and justify a super deferred restitution hearing. We're now over a year past the 90-day deadline, I believe, if not close to it, and so... But if the government wants to try and open that hearing, then it can, and it can also try to invoke the good cause conception. I do want to emphasize here, and this was the first of the four points I made, that there actually is no lawful basis for imposing restitution in this case, and that is very clear in light of the requirement that losses that are recoverable under 2259 or any restitution statute have to be proximately caused by the actual offensive conviction. And the offensive... This is another underscoring the exceedingly rare aspect of this case. This is one of these very odd morphed cases where the defendant has superimposed pictures, faces from pictures of minors onto actual adults. And so what that means is that it's very rare because, one, they're actually... In almost all child cases involving this type of material, the individual, the minor, is actually harmed by the mere process of making the images because they're involved in the sexually explicit acts. That didn't happen here because we've just got melding, photoshopping photographs together. So mercifully, these two little girls weren't involved in the production at all, apart from the fact that their pictures were taken... But couldn't they still need therapy and such? They could, but that's the other part of this record is that they also, I would say mercifully, are not aware that these images exist. And in the future... That's why I would say that there is a very remote possibility in the future that the government could rely on 3664D5's good cause exception. Because let's say one of these minors, when they were 20, found out that these pictures were made and then that caused them to seek therapy or further... The internet is forever. Right. I would honestly hope that doesn't happen because what that would mean is that people suffered harm. But at the same time, I would understand if one of these mothers felt compelled to tell their daughter that this happened to them in the past. And if that were to happen, then the government could come in and say, hey, we have newly discovered restitute. We have actual losses now. There were no losses before. The pictures have never been trafficked. They didn't... Unlike almost all child pornography cases, they didn't make their way past Adobe's cloud server. So we literally have... So you think they are locked down? Yes. That is my understanding completely from the record. That's what was represented at the sentencing hearing. And I have no reason to think otherwise. Could we talk about whether it's abuse of discretion or plain error and does it even matter here? In respect to these conditions? Yes. As to these conditions, I have conceded in my brief and you, of course, are free to reject that concession. Plain error, but there wasn't any opportunity to object at the sentencing, was there? Not to restitution hearing. So how could there... Why would that be plain error then? Well, because we didn't stand up as we should have and said these conditions shouldn't be imposed. And I accept that. I will say we got the victim impact statements five days... When would you have done that? At sentencing, I would have... At sentencing, you should have stood up and said... I'm not maligning you personally or anything, but that... No, I welcome this line of thought that we wouldn't be... But yes, Judge Elrod, I think the way I understand it is we did have a copy of the appendix to the PSR. These two conditions were listed and the judge did say, I'm incorporating the appendix. But the district court was required to confirm that the defendant had reviewed the PSR with the counsel under the Kizada-Ataida case and did not do so. You are correct, Judge Elrod, that that didn't technically happen in this case. There have been a couple of cases since then. I am sorry, I'm forgetting the name of it. I write it in Andrew's briefs all the time. But there have been cases that suggest as long as the hearing, there was a robust discussion about the PSR and everything else, the court is willing to infer that... That's a 2025 case that says... We've reiterated that, by golly, we meant it when we said that in Dickels. I agree. As I understand it, there is currently a petition for re-hearing that is still pending and has been pending. The government was ordered to respond and it's been pending for months now. So I don't know. On that very issue, you know, the fact that your opinion in Kizada-Aida, I believe it is, conflicts with the later one. I'm sorry that it escapes my mind right now. But in any case, even on plain error review, we've got this. You still win anyway on plain error, so this might not be the case to have this discussion. I think that's right. Under your interpretation. I'm not foreshadowing. That's your position. Briefing was before that kind of issue became... You know, I got myself several Anders kickbacks on that very issue and had to brief it. But that whole issue kind of arose in a time period that happened after briefing was already complete in this case. I can't tell you whether or not I would have raised it either way. I may have noted it, but then said that regardless of how that shakes out, we would win in any event under plain error review because it's so clear that there's no basis apart from restitution. And it's also so clear that there's no factual basis to impose a lawful restitution order on this particular unique record. And so that's why we think that the court should order that these conditions be stricken as well. And if there's no further questions, I will happily give my time back to the court. Thank you. Mr. Smith? Good morning. May it please the court, Jason Smith for the United States. The appropriate standard of review here is plain error. The defense could have objected at the point where the district court imposed the conditions, including these financial conditions that were listed in the PSR. And I want to clear up a couple of factual issues with the record. With respect to whether the court deferred the entire issue of restitution or just the amount of restitution, the transcript at sentencing is clear. At page 171 of the record, the district court says the restitution amount is left open for 90 days. The restitution amount. There was no issue at the time of sentencing about whether the defendant was actually subject to restitution to these two victims who he at sentencing acknowledged, defense counsel acknowledged, page 158 of the record. Obviously, my client's conduct is the main cause for the victim's suffering. He acknowledged causing harm to these victims. He did that in the context of the mandatory statute calling for restitution, 18 U.S.C. 2259, including all losses reasonably projected from this kind of conduct, which, as you noted, Judge Elrod, Chief Judge Elrod, involves potential counseling down the road. But the government has to prove it. It does. There was no proof here. I apologize, Judge. There's no proof here. Nothing. The restitution order could be zero, I guess a dollar, something like that. If there were no harm, that could be done. But we're just conjecturing about the harm at this point, right? Everyone agreed at the time of sentencing that there was harm. But you have to quantify it. We do, and that's what the district... And to quantify the restitution is important because that is the basis for the financial disclosure conditions, et cetera, that are at issue. Assuming that the financial disclosure conditions can only be supported by a restitution order, which Godfrey seems to make not clear, certainly not clear for plain error. But Godfrey's an O2 case that's not published.  And you didn't brief it on your initial pass. You got a 28-J about it. It was not included. But looking at the prongs of plain error, there is no case, Mr. Howes talks about how this is a bit of a unique situation, to satisfy plain error. What you really need is a case that's pretty close to on point, saying the district court can't do this. Well, but what does seem plain to me is the restitution amount was never ordered. There was never a hearing. It was envisioned at some point in time, but you've got a blank. I mean, it seems to me very clear to make sense to vacate all of that, send it back, and the district court can do what it wants to do. In other words, all these problems can be corrected rather than sort of shoehorning this in to an unpublished case from 20 years ago plus and saying, well, restitution's there. We'll just figure it out later. Well, I think the deferred restitution, deferring the amount of restitution is exactly what the statutes contemplate and exactly what Dolan contemplates and exactly what the defense was contemplating at sentencing. But isn't there a 90-day limit to do so? There's a 90-day time period, but Dolan says that that's not a binding time period. Well, sure, but the statute clearly contemplates that it'll be done at some point in the near future, and now we're a year out. We are farther out. My understanding is, number one And there's no reason for there to be a year out. We're not waiting on something to come in or anything like that that would justify it. It just sort of fell through the cracks is what it looks like to me. Well, the information in the record is pretty limited. I have a little bit of information beyond that. I can say at sentencing, the expectation from all of the parties, including the defense, contrary to the argument that they're making here, was that the defendant would be subject to restitution. At page 133 of the record, defense counsel said, we will probably be able to reach an agreement on restitution. And they say, I would request some time to resolve that. And my understanding, to go outside the record, is that the government did reach out to the defense to try to come to that agreement that, number one, all of the parties thought was going to happen, and two, that the district court expressed a preference for, and that there wasn't, and I don't want to, I don't want to suggest that defense is somehow to blame for this, but that there wasn't a quick response that allowed that to happen. And that then, this appeal had happened, and a decision was made to not pursue getting the restitution amount set in the amended judgment that's allowed by Dolan and allowed by the statute while this appeal was pending. So that is my understanding of what has played out here. And all of that, going back to the question that's before this court, which is, did the district court plainly err by imposing these conditions, where the statute not only calls for mandatory restitution, it sets a bottom bar of $3,000 per victim in a case where the defense acknowledged the harm that the defendant had caused to those victims and had indicated, not that it thought there was absolutely no basis and restitution could never be entered, but that the parties could probably reach an agreement on that. So it was pretty much a certainty that there would be some restitution ordered, thus justifying the financial conditions. Is that your position? That is, yes. That is my understanding of the record and of the positions that the parties took at the time of sentencing. Where specifically do you believe that restitution was ordered, determined that there would be restitution? Because it says restitution is not ordered. So where was restitution ordered? You said today and in your brief that the district court ordered restitution. Where did the government order restitution? I mean, the judge, excuse me.  There is not an explicit statement in the sentencing transcript, I am ordering restitution, but what the court says is the restitution amount is deferred. No, it says I will leave the restitution issue open at this point. It does not say amount. It says the restitution issue is open. Respectfully, Judge, if you turn to page 171 of the record. That's what I'm, tell me what? Page 171 of the RLA. I'm at 186 and it says the restitution amount is open. Where in the transcript is that? Line 12 is page 47 of the sentencing transcript, page 171 of the RLA. 41 of the sentencing transcript? 47, Your Honor. Okay. Because I'm looking at the sentencing transcript where he says, where the judge says that it's been left open. Go ahead. Line 12 on page 171 of the RLA. It says amount there, but previously it said the restitution issue is left open. And they've said, and part of that issue is whether or not there was indeed evidence of that. I don't think the question of whether there was evidence ever came up. The initial discussion of restitution, which starts at page, I think 133, the court notes that there were two restitution requests and then immediately asked the party, has there been an agreement? And the prosecution says, no, and then says, I don't know what the defense's position is. And just to underscore the idea that no one was taking the position that restitution is completely uncalled for in this mandatory restitution case where there is a floor set of $3,000 per victim, defense does not say, well, our position is that the government has to prove that up. Our position is that there is no basis for restitution here. What the defense says is, we will probably be able to reach an agreement. So I would ask- But the financial conditions are not reasonably related to one of the four statutory factors as is required under Ramos-Gonzalez. I don't know that I would agree with that, but I am confident that the error was not plain at the time that the court imposed them, given this entire factual backdrop, which is that, as I've said, and does not appear to be persuading you, Your Honor, restitution is mandatory. It's set at a minimum of $3,000 per victim, and everyone at the time of sentencing foresaw that that was where this was going to go. So you tried a couple of times to read from 171, so why don't you go ahead and do that now? Oh, I thought he did read from it. I thought I had. Please read from it. I thought he did read from it. Sure. Line 12, on page 171 of the ROA, is the district court saying, the restitution- Amount. It does say amount there. Absolutely, it says amount there. But on the other page, it does not. It says the issue. It does, and I- And then the box was not checked. The box on the judgment, I believe, is checked, saying that restitution will be set in 90 days. And the court shall enter an order, which, again, under the plain error standard here indicates the same expectation that is throughout this record, that obviously this defendant is subject to restitution. But the determination of restitution is deferred until 90 days. If they didn't check the box, it says the defendant must make restitution to the following payees. Correct. That is the correct box. But it does not say, but the determination of restitution is deferred until 90 days, doesn't say the amount. It just says the determination of restitution. That is what the form says, Your Honor. That is the standard form. I don't think that there is a box to check that says the amount of restitution, but not the determination. That just doesn't exist. Well, the first box you could check that says to the following people, and then say at the amount to be determined later. The judge certainly could have clicked the other box. I think the clearest indication here are the words that the judge spoke whenever he said the restitution amount is deferred. And again- Can you address Quezada, Ataya, and whether or not plain error is indeed the standard? I understand your friend says it doesn't matter, but why is plain error the standard here where the district court failed to make sure that the defendant had notice of the conditions? I agree with Mr. Howells that the requirement, the controlling nature of the requirement that the district court actually confirmed that the defendant reviewed the PSR, had the opportunity to review the PSR with defense counsel, appears to still be up in the air a little bit before this court. Does it? The earlier cases, including our en banc case, say that it's required. I understand that, Judge. So assuming arguendo, that is the law of the circuit, why would plain error be the standard here? Because here the PSR was the centerpiece of the sentencing proceeding. It was discussed multiple times. That has been sufficient in other cases to satisfy the requirement of ensuring that the defendant was able to discuss the PSR with the defendant. And honestly, I think if we go back to the page of the transcript that talks about why they had not yet discussed restitution, defense counsel makes reference to the fact that the victim impact statements came out the same day that the amended PSR came out, so we haven't had a chance to discuss those with our clients. It indicates that the defense counsel did have an opportunity to review the PSR with their client and had done that in lieu of discussing the victim impact statements. I think that's a solid basis for concluding that there was an adequate record from which the district court could conclude that defense counsel and the defendant had had an opportunity to discuss the PSR in these conditions. If the court doesn't have any other questions, we'll rest on our brief and ask that this court... So there was a discussion with Mr. Howes, I'm just going by something you haven't touched on, and it may be kind of a down-on-the-weeds hypothetical discussion, but it's this question that's come up before in other cases where if we just remand for resentencing and don't say anything else, my understanding is that opens up the totality of resentencing because the district judge takes into account everything about the case in order to issue a revised sentencing order. That's correct, Your Honor. I don't think either party is asking for a remand for complete resentencing here. No, no. Again, this is kind of hypothetical, down-on-the-weeds, but if we said nothing else but remanded for resentencing, again, my understanding is that opens up everything. I'm not suggesting that's the way we're going to say it. I just want to get the government's view on that. Sure. Sure. A remand for resentencing would open everything up. We don't think that's the appropriate resolution here, and it's also our position that imposing restitution after this case is remanded doesn't bring into question the mandate rule, the position of an amended order setting the amount of restitution wouldn't be based on this court's remand or the portions of the judgment that are vacated before remand. It would be based on the restitution statutes 2259, 3664, and on Dolan. That's where the district court's authority to set the amount of restitution that it originally deferred would come from, and it wouldn't be related to the appeal here. If the court doesn't have any other questions, we will rest on our knees. Thank you.  Thank you very much. I do have several points of rebuttal, Your Honors. I'm going to focus on clarifying the record here with respect to whether or not the judge left open restitution, but first, real quickly, Judge Smith, I can respond to your mandate issue question. My understanding is that the sentencing package can be open where the court vacates for resentencing. I don't understand there to be a basis for resentencing here. I think it would certainly be odd if we asked the district court to reweigh the 3553-85 years and impose a 100-month sentence instead of a 120-month sentence when the only reason the case is going back consistent with any opinion from this court will be based on the conditions of release. I do think it is constricted in that way, just like we can't go back and re-litigate guidelines enhancements that were already adjudicated. If they don't arise out of the appeal, then they're not something that can be re-dealt with on a remand from this court. With respect to whether or not the district court, in fact, ordered restitution, Chief Judge Elrod hit it right on the head when she recognized that in the Statement of Reasons, the district court checked the box that says restitution is not ordered for other reasons and then it said restitution to be determined. It did not say restitution amount to be determined. I would like to note that just two boxes above that, there's a box for offenses for which restitution is otherwise mandatory. Restitution is not ordered because the victim's losses were not ascertainable, citing to 3664 D5, which is the only basis for deferring restitution here. The judge did not tick that box. And we know that it wasn't the case that restitution wasn't ascertainable at the time of sentencing because the victim's mothers, they aren't actually victims as to this offense, sent in their impact statements and put a number onto it. So it's not as if the court didn't have the number. But I do want to also get to the sentencing hearing. I do want to say I think the discrepancy for the numbers is that there was a redacted transcript in this case, Judge Elrod, so you may have the non-redacted version. That might be the discrepancy for the ROA numbers. What I can say is that on page nine, the initial colloquy, you are exactly right to say what the court did was it said, look, we have these impact statements. Here are the two numbers. Have you guys talked about this? The government said no. And we said no. We got this five days ago because that was the day the amended PSR came out. So we haven't had a chance to talk to our client yet. That is not in any way a suggestion that we agree that there is a restitution, a basis for recoverable losses here. That is a suggestion that we didn't get this, which, by the way, was out of compliance with Rule 32 and Section 3663A something, I don't know exactly which one, but the statute and the rule required the government to disclose losses multiple days prior to the sentencing hearing. That didn't happen. Now, did Mr. Mendoza's attorney, I'm referring back to something Mr. Smith said, did he make some acknowledgment of, he used the words, the victim's suffering? Yes, he did, Judge Smith, and that was the next point that I wanted to make. If you turn to that page in the record, and I hope that you will, and that entire, that's during our statements on behalf of our defendant once we've already messed with all the sentencing guidelines calculations and we're trying to appeal to mitigation. What we did recognize was we were the main cause for the victim's suffering, and he's talking about the mothers, and he's talking about the suffering that they have noted related to that prior incident, the non-relevant conduct that formed the basis for the almost five-year enhancement in this case, and you'll note we have not objected to that enhancement. We accept that the district judge found by preponderance of the evidence that that other incident, which is terrible, happened, but that other incident cannot form the basis of restitution because it was two years before the actual offense of conviction. And so to say that we recognize the suffering that our client's non-relevant conduct has dispensed on these mothers and potentially the daughters, and certainly the daughter that was at issue in the touching incident, is not to say that we agree that there are recoverable statutory losses from the morphed Photoshop offense. Those are two completely separate things, so we do not agree that there was any amount of loss here. And I do want to point out, and this will be the last thing I say, as Mr. Smith stood here today, he could not identify for you one piece of information or evidence that's of loss. He couldn't tell you one piece of loss that derived from this offense. And I think that is telling, and that is why the court should vacate these conditions as well as remand for reformation of the judgment. Thank you, Your Honor. Thank you. Thank you. We have both arguments. We appreciate both arguments, and the case is submitted.